ROBERT BARNES (State Bar No. 119515)
Email address:  robert.barnes@apks com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California  90017-5844
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199

Attorneys for Plaintiff
DEEPAK VOHRA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| DEEPAK VOHRA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF PLACENTIA; and RICHARD PASCARELLA,<br><br>　　　　Defendants. | Case No. 8:11-cv-01267-DSF (AGR)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ADVERSE INFERENCE INSTRUCTION**<br><br>Date:　　　January 8, 2018<br>Time:　　　1:30 p.m.<br>Place:　　　Courtroom 7D<br>Pretrial:　　April 9, 2018<br>Trial:　　　May 8, 2018 |

ARNOLD & PORTER | KAYE SCHOLER

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 2

  1.   Vohra Exercises His First Amendment Rights ................................ 2

  2.   Pascarella Arrests Vohra ............................................................... 2

  3.   The City Produces The Redacted Tape .......................................... 3

  4.   The City Produces The CAD Log................................................... 4

  5.   The Court Permits Vohra To Obtain Discovery Of The
       Unredacted Tape .......................................................................... 4

  6.   The City Acknowledges That The Tape "No Longer Exists" ............... 5

III.  ARGUMENT ........................................................................................ 5

       A.   THE CITY'S CONDUCT CONSTITUTES SPOLIATION ...... 5

       B.   THE CITY'S SPOLIATION IS IMPUTED TO
            PASCARELLA .......................................................................... 8

       C.   THE COURT SHOULD REMEDY THE SPOLIATION
            BY GIVING AN ADVERSE INFERENCE
            INSTRUCTION ...................................................................... 11

  1.   Rule 37(e) May Not Be Applicable ............................................... 12

  2.   If Rule 37(e) Does Not Apply, An Adverse Inference Instruction
       Under The Court's Inherent Powers Is The Appropriate Remedy
       For The Spoliation ....................................................................... 15

  3.   If Rule 37(e) Applies, It Also Justifies An Adverse Inference
       Instruction ................................................................................... 18

IV.   CONCLUSION ................................................................................... 20

ARNOLD & PORTER
KAYE SCHOLER

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Electronics Co.*,
881 F. Supp. 2d 1132 (N.D. Cal. 2012)......................................6, 12, 18, 20

*Compass Bank v. Morris Cerrullo World Evangelism*,
104 F. Supp. 3d 1040 (S.D. Cal. 2015) ................................................5, 12

*Cone v. Hankook Tire Co.*,
2015 WL 1277060 (W.D. Tenn. Mar. 20, 2015) ...................................8

*Davidson v. Nicolou*,
2017 WL 3726712 (S.D. Ga. Aug 29, 2017)........................................10

*Deocampo v. Potts*,
836 F.3d 1134 (9th Cir. 2016) ...........................................................11

*Distefano v. Law Offices of Barbara H. Katsos, P.C.*,
2017 WL 1968278 (E.D.N.Y. May 11, 2017).....................................13

*DVComm, LLC v. Hotwire Communications, LLC*,
2016 WL 6246824 (E.D. Pa. Feb. 3, 2016) .........................................19

*First Financial Security, Inc. v. Freedom Equity Group, LLC*,
2016 WL 5870218 (N.D. Cal. Oct. 7, 2016).............................12, 17, 19, 20

*Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*,
2015 WL 12746220 (C.D. Cal. Feb. 10, 2015) ...................................6

*Glover v. BIC Corp.*,
6 F.3d 1318 (9th Cir. 1993) .............................................................16

*HM Electronics v. R.F. Technologies, Inc.*,
2015 WL 4714908 (S.D. Cal. Aug. 7, 2015)...............................18, 20

*In re Napster, Inc. Copyright Litigation*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006)...........................................6, 8, 9

*In re Oracle Securities Litigation*,
627 F.3d 376 (9th Cir. 2010) ...........................................................12

*Internmatch, Inc. v. Nxtbigthing, LLC*,
2016 WL 491483 (N.D. Cal. Feb. 8, 2016) ...............................18, 20

*Johnson v. Wells Fargo Home Mortgage, Inc.*,
635 F.3d 401 (9th Cir. 2011) ...........................................................12

*Leon v. IDX Systems Corp.*,
464 F.3d 951 (9th Cir. 2006) .....................................................6, 16

ARNOLD&PORTER | KAYE SCHOLER

*Mazzini v. Nevada*,
  2017 WL4284597 at *6 (D. Nev. Sept. 27, 2017).....................................9

*Muhammad v. Mathena*,
  2016 WL 8116155 (W.D. Va. Dec. 12, 2016) ..........................................10

*O'Berry v. Turner*,
  2016 WL 1700403 (M.D. Ga. April 27, 2016)...........................................19

*Pettit v. Smith*,
  45 F. Supp. 3d 1099 (D. Ariz. 2014) ..............................................*passim*

*Ramos v. Swatzell*,
  2017 WL 2857523 (C.D. Cal. June 5, 2017).....................................*passim*

*Residential Funding Corp. v. DeGeorge Financial Corp.*,
  306 F.3d 99 (2d Cir. 2002) .............................................................16, 17

*Security Alarm Financing Enterprises, L.P. v. Alarm Protection Technology, LLC*,
  2016 WL 7115911 (D. Alaska Dec. 6, 2016)...........................................15

*Thomas v. Butkiewicus*,
  2016 WL 1718368 (D. Conn. April 29, 2016) .................................14, 15, 20

*TLS Management and Marketing Services LLC v. Rodriguez-Toledo*,
  2017 WL 1155743 (D.P.R. Mar. 27, 2017)...............................................19

*Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*,
  982 F.2d 363 (9th Cir. 1992) ................................................................16

*United States v. Kitsap Physicians Service*,
  314 F.3d 995 (9th Cir. 2002) ...............................................................5, 6

*Vohra v. City of Placentia*,
  683 F. App'x 564 (9th Cir. 2017) ........................................................3, 4, 5

*Williams v. Horvath*,
  16 Cal. 3d 836 (1976) ........................................................................11

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003)...........................................................16

**Statutes**

42 U.S.C. § 1983..............................................................................*passim*

42 U.S.C. § 1988.....................................................................................11

Cal. Gov't Code § 825(a).........................................................................11

Cal. Gov't Code § 825(b) ........................................................................11

Cal. Veh. Code § 2800.1(a) ......................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARNOLD & PORTER
KAYE SCHOLER

**Rules**

Fed. R. Civ. P. 26(a) ........................................................................................ 3, 4, 17

Fed. R. Civ. P. 37(e) ............................................................................... *passim*

**Other Authorities**

8B Charles Wright, Arthur Miller & Richard Marcus, *Federal Practice and Procedure* (Supp. 2017) ................................................................... 19

ARNOLD & PORTER | KAYE SCHOLER

ARNOLD&PORTER
KAYE SCHOLER

# I.   INTRODUCTION

In this Section 1983 action, Plaintiff Deepak Vohra alleges that City of Placentia police lieutenant Richard Pascarella arrested him without probable cause and in retaliation for Vohra's exercise of his First Amendment rights.

In 2011, the City, then a party to the action, produced an edited tape of the communications between Pascarella and the City's police dispatcher relating to Vohra's arrest.  Recently, on remand from the Ninth Circuit, the Court permitted Vohra to request a more complete, unredacted version of these communications. However, in response to Vohra's subpoena, the City has admitted that it destroyed the original recording and cannot comply.  Vohra requests an adverse inference instruction to remedy this intentional spoliation of key evidence.

Vohra contends that, before the arrest, Pascarella knew Vohra to be the truck's driver, recognizing him as the serial irritant who had exchanged over two dozen letters with the Placentia Chief of Police complaining about the conduct of his officers.  A computer-assisted log of the dispatcher's communications with Pascarella shows that Vohra had been identified to Pascarella as the truck's driver *before* Pascarella decided to pull the truck over and arrest Vohra.  This communication was omitted from the edited tape produced by the City.  The now-destroyed recording would have confirmed Vohra's account—which, no doubt, was why it was destroyed.

The City had a duty to preserve the unredacted recording; its destruction constitutes spoliation.  Consistent with *Pettit v. Smith*, 45 F. Supp. 3d 1099 (D. Ariz. 2014), and *Ramos v. Swatzell*, 2017 WL 2857523 (C.D. Cal. June 5, 2017), the City's spoliation is imputed to Pascarella.

Pursuant either to this Court's inherent authority to deter and remedy evidence spoliation, or to Federal Rule of Civil Procedure 37(e)(2)(B), or both, Vohra requests that the Court give an instruction directing the jury to infer that, had the City preserved the recording as the law requires, it would have shown that Pascarella knew Vohra to be the driver of the truck before he determined to pursue and arrest Vohra.

1

## II.    FACTUAL BACKGROUND

1.  <u>Vohra Exercises His First Amendment Rights</u>

On September 10, 2009, a City of Placentia police officer gave Vohra two traffic infraction tickets a few minutes apart.  Vohra complained about the officer's conduct in writing to Placentia's then-Chief of Police James Anderson.  *See* Verified Complaint (Dkt. No. 3) at ¶12; Dkt. No. 116 at 10-11 at ¶4.  The City declined to prosecute the tickets, which were both dismissed.  *Id*.

Over the next year, Vohra exchanged more than twenty letters and several telephone calls with Chief Anderson and/or his administrative sergeant Michael Busse concerning the inadequacy of the City's response to the two dismissed tickets and to Vohra's complaints of harassment.  *Id*.; Dkt. No. 3 at ¶¶12-18, 30.  Because the Placentia Police Department then had only a handful of senior officers, including Pascarella and Busse, *see* Barnes Decln. at Ex. C at 3, Pascarella knew Vohra's name as a serial complainer and persistent irritant to the Department and to its Chief.

2.  <u>Pascarella Arrests Vohra</u>

On October 16, 2010, just before midnight, Pascarella says he pulled up his police vehicle alongside a truck driven by Vohra that was waiting at a red light at the intersection of Orangethorpe and Kraemer in Placentia.  *See* Dkt. No. 108-4 at Ex. G at ¶¶9-10.  According to Pascarella, he determined that the stationary truck beside him had no front license plate.  *Id*.

Rather than pull the truck over for the infraction, Pascarella instead followed Vohra down Orangethorpe going east, over the junction with Miller, and then for another half a mile to Orangethorpe and Rose.  *Id*.  According to Pascarella, he turned on his overhead lights just before Orangethorpe and Miller, and then, allegedly, activated his siren before Rose.  *Id*.

At Orangethorpe and Rose, Pascarella pulled in behind Vohra's truck, which was stopped in the left-turn lane at a red light waiting to turn onto Rose.  *Id*. at ¶11.  Vohra immediately acknowledged Pascarella's presence, turned northbound onto

2

ARNOLD & PORTER | KAYE SCHOLER

Rose, pulled over promptly into a 7-11 parking lot, and exited the truck. *Id.* at ¶¶11-12. Other Placentia squad cars arrived at the 7-11 lot. *Id.* Pascarella arrested and handcuffed Vohra. *Id.* According to Vohra, when he asked Pascarella why he had been arrested, Pascarella replied: "So you can write another letter to the Chief of Police." *Vohra v. City of Placentia*, 683 F. App'x 564, 566 (9th Cir. 2017).

Pascarella charged Vohra with (i) the misdemeanor of willfully fleeing Pascarella's police car, contrary to California Vehicle Code § 2800.1(a), and (ii) an infraction for driving with no fixed front license plate. Dkt. No. 108-4 at Ex. E. In January 2011, the Orange County District Attorney voluntarily dismissed the misdemeanor charge; Vohra paid a $30 fine for the license plate infraction. *Id.*

3. The City Produces The Redacted Tape

In August 2011, Vohra commenced this Section 1983 civil action, alleging wrongful arrest and retaliation for the exercise of his First Amendment rights. *See* Dkt. No. 3. The complaint was alleged against the City of Placentia, and against Pascarella, Busse, and Chief Anderson individually (collectively "Defendants"). *Id.*.

On December 9, 2011, Defendants served their Rule 26(a) Initial Disclosure. *See* Declaration of Robert Barnes at ¶2. Among the documents Defendants then produced was a CD containing an edited version of the recorded communications between Pascarella and the police dispatcher relating to Vohra's arrest. *Id.* at Ex. A (copy of produced CD) ("the Tape").

The first entry on the Tape is Pascarella telling the dispatcher he is tracking a truck bearing Vohra's license plate number and is at Orangethorpe and Miller in Anaheim, outside Pascarella's jurisdiction. *Id.* This is almost a mile beyond Orangethorpe and Kraemer where Pascarella claims to have first noticed the no-front-license-plate infraction.

The next entry on the Tape has Pascarella telling the dispatcher about a "failure to yield" by the truck as he approached Orangethorpe and Rose. *Id.* The remaining entries report that the truck pulled into the 7-11 parking lot on Rose, that other police

3

ARNOLD & PORTER
KAYE SCHOLER

vehicles had arrived at the 7-11, that Pascarella was returning to the station with the arrested driver, and that the truck had been impounded. *Id.*

### 4. The City Produces The CAD Log

On January 23, 2012, six weeks after voluntarily producing the Tape with their initial disclosures, Defendants served their responses to Vohra's first set of document requests. *See* Barnes Decln. at ¶3. Attached to these responses was a three-page document described as "Placentia Police Department Computer Aided Dispatch logs for incident Number 102890112 on or about October 16, 2010 relating to arrest of Deepak Vohra" ("the CAD Log"). *Id.* at Ex. B.

Page 2 of this "CAD Log," under the heading "CAD Narrative," states:

"11:30:57 PM=4N12335.CA; Vohra, Deepak 012251 BKD PPD for DUI

11:31:44 PM FTY

11:32:19 PM NB Rose

11:32:19 Pulling 7-11."

*Id.*

The text of the CAD log indicates that the dispatcher informed Pascarella that Vohra was the driver of the truck he was following one minute and 22 seconds *before* Pascarella followed Vohra's turn northbound onto Rose. *Id.*

The distance from Miller to Rose is about 0.5 mile. *Id.* at ¶4. Pascarella claims he was following Vohra at 55-60 miles per hour down Orangethorpe from before Miller. Dkt. No. 108-4 at Ex. G at ¶10. Thus, the communication between Pascarella and the dispatcher timed at 11:30:57 PM on the CAD Log identifying Vohra as the truck's driver *must* have occurred *before* the first audio communication reported on the produced Tape.

### 5. The Court Permits Vohra To Obtain Discovery Of The Unredacted Tape

The Ninth Circuit reversed the summary judgment and remanded Vohra's claims against Pascarella, but affirmed the dismissal of the City, Anderson, and Busse. *See* 683 F. App'x at 568. After denying the City's request for rehearing, the

4

ARNOLD & PORTER
KAYE SCHOLER

Ninth Circuit's mandate issued on May 30, 2017, *see* Dkt. No. 139, removing the City as a party to this action as of that date—almost five and a half years after Defendants had produced the redacted Tape in their initial disclosures.

After remand, Vohra moved to re-open discovery.  Dkt. No. 150.  The motion laid out the inconsistency between what the CAD Log states and what is on the produced Tape.  *Id*. at 3-4; *see also* Dkt. No. 160 at 7-8.  Vohra asked the Court's permission to request from the City an unredacted version of the recording that included the Pascarella/dispatcher communications before the first exchange on the produced Tape.  *Id*.  The Court granted the motion on this point.  Dkt. No. 163 at 2.

6.  The City Acknowledges That The Tape "No Longer Exists"

Per the Court's order, Vohra served a subpoena on the City, including a request for the unredacted recording.  *See* Barnes Decln. at ¶5.  After seeking and receiving two extensions of time, *id.*, the City responded on November 7, 2017.  *Id.*

With respect to the request for the unredacted tape, the City responded:

A diligent search and reasonable inquiry was made by the City in an effort to locate the item(s) requested.  However, the City is unable to comply since the item(s) requested no longer exist, and, as such, are not in the possession, custody or control of the City.

*Id.* & at Ex. C at 2.

Vohra asked the City's counsel to explain when and how the recording was lost or destroyed.  *Id*. at ¶7 & Ex. D.  No reply or explanation has been given.  *Id.*

**III.   ARGUMENT**

A. THE CITY'S CONDUCT CONSTITUTES SPOLIATION

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Compass Bank v. Morris Cerrullo World Evangelism*, 104 F. Supp. 3d 1040, 1051-52 (S.D. Cal. 2015).  Spoliation occurs when potentially relevant evidence is destroyed, thereby impairing the victimized party's "ability to go to trial or threaten[ing] to interfere with the rightful decision of the case."  *United*

ARNOLD & PORTER
KAYE SCHOLER

*States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002).

A party has the duty to preserve materials if it has "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Kitsap*, 314 F.3d at 1001. "Once this duty is imposed, the knowing or reckless destruction of evidence constitutes spoliation." *Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.,* 2015 WL 12746220 at *5 (C.D. Cal. Feb. 10, 2015) (citing *Kitsap*, 314 F.3d at 1001); *see Apple Inc. v. Samsung Electronics Co.*, 881 F. Supp. 2d 1132, 1135-38 (N.D. Cal. 2012) (citing many cases defining the duty to preserve evidence, what constitutes spoliation, and appropriate remedies).

"A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions.  District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation." *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (citing numerous cases).

Evidently, the City itself decided that the communications between Pascarella and the dispatcher were relevant and material evidence because the City volunteered a version of the communications in its initial disclosures in December 2011.  And in making the Tape, the City must have assembled and then edited the pertinent communications between Pascarella and the dispatcher from among the presumably hundreds of interactions between the dispatcher and various officers working in the field during the dispatcher's shift on the night of Vohra's arrest.  In this situation, the City assumed a legal duty to preserve, for at least the pendency of the litigation, the complete unredacted recording of the communications from which it drew what it chose to produce on the Tape.

"The applicable standard of proof for spoliation in the Ninth Circuit appears to be by a preponderance of the evidence." *Ramos v. Swatzell,* 2017 WL 2857523 at *5 (C.D. Cal. June 5, 2017).  The City has refused to offer any explanation about when and how and why the unredacted tape was destroyed.  Until the Ninth Circuit's

ARNOLD & PORTER | KAYE SCHOLER

mandate issued in May 2017, the City remained a party to whom all of the law's preservation obligations continuously attached during the years the litigation had been pending.  In the absence of any information to the contrary, the preponderance of the evidence shows that the materials were intentionally destroyed during the almost six years between the initial disclosures and the Ninth Circuit's May 2017 mandate.  Throughout that pre-mandate period, the City was required to preserve the unredacted communications, but failed to do so, making it liable for spoliation.

Moreover, even if the City had destroyed the evidence in the short window between the May 2017 issuance of the Ninth Circuit's mandate and this Court's September 2017 order permitting Vohra to obtain the unredacted Tape--and the City has provided no hint that might be true--that would still be spoliation because the City, as the custodian of the unredacted recording, had a continuing obligation to preserve the unedited recording for as long as the lawsuit continued.[1]

Further, whatever the City's post-remand preservation duty, *Pascarella* still had his own *independent* obligation to ensure the preservation of the original communications.  The Tape was originally made and produced on behalf of *all* Defendants, including Pascarella.  Although the primary preservation obligation may have rested with the City because it physically held the recording, Pascarella should have taken steps to ensure that the City's dismissal from the continuing case did not result in the destruction of potentially dispositive evidence, such as the unredacted recording of his communications with the dispatcher.

Indeed, that preservation obligation ran equally to Pascarella's current

---

[1] *See Cone v. Hankook Tire Co.*, 2015 WL 1277060 at *2 (W.D. Tenn. Mar. 20, 2015) ("Hankook would be unfairly prejudiced if it could not seek a remedy for a potential spoliation merely because Southern was no longer a party to the action.  Defendants point to no authority indicating that Southern's dismissal would prevent its spoliation from being imputed to [the remaining co-parties] under appropriate circumstances, and the Court has not found any such authority independently.").

ARNOLD&PORTER
KAYE SCHOLER

counsel—the same law firm that represented Defendants in 2011 when the Tape was made and produced, and represented Defendants through the Ninth Circuit appeal, and who continues to represent Pascarella, as the remaining defendant, now.

Accordingly, the Court should conclude that the destruction of the unredacted communications between the dispatcher and Pascarella violated the duty to preserve relevant evidence and constitutes spoliation.

## B. THE CITY'S SPOLIATION IS IMPUTED TO PASCARELLA

Even if Pascarella did not himself have a preservation obligation, the City's breach of its obligation and subsequent spoliation of the Tape should be imputed to him.  In *Pettit v. Smith*, 45 F. Supp. 3d 1099 (D. Ariz. 2014), the court considered whether spoliation of evidence by a non-party public entity should be imputed to an officer-defendant in a Section 1983 case.  The district court held that, provided certain factors are met, the entity's spoliation is indeed imputed to the officer.  *See id*. at 1108-11.  Those same factors are all met here.

In *Pettit*, a prisoner was involved in a fight with a guard, and then sued the guard under Section 1983 for using excessive force.  *Id*. at 1102-03.  The incident was recorded by the prison's video system.  *Id*.  at 1103.  The prison authorities relied on the video to reprimand the guard, and then erased it as part of the prison's standard operating procedures.  *Id*. at 1103-04.  When the prisoner requested the video in discovery in his federal action, the prison admitted it could not comply.  *Id.* at 1104.  The district court held that the prison, despite being a non-party, had breached its duty to preserve the video, and the prison's spoliation should be imputed to the guard-defendant.  *See id.* at 1105-10.

The court found that the prison authority had a duty to preserve the video because "ADC is not a disinterested party.  It is responsible for [the guard's] training and conduct, and it had complete control over the relevant evidence in this case, and over Plaintiff's ability to access that evidence and [the guard's] ability to preserve it."  *Id*. at 1106.  "The prison had full and sole control over the video and whether it

8

would be preserved as evidence in the case." *Id.* Further, the *Pettit* court found it significant that, because of a state statute, the prison authority was indemnifying the guard against both any damages awarded against him for his work-related activities and also the legal fees he was incurring in defending those activities in litigation. *Id.*

Having found the video's destruction to be spoliation and that the guard's non-party employer was responsible, the court then rejected the guard's argument that, since he was not personally involved in destroying the video, he should not be charged with sanctions for his employer's spoliation. *Id.* at 1108. It held:

> For the same reasons that the Court found that ADC [the State prison authority] had a duty to preserve the evidence lost in this case, the Court finds that there is strong reason to impute the spoliation of ADC to Defendant to ensure that fairness is done at trial.

*Id.* at 1110. The court ordered that the jury be given an adverse inference instruction against the guard stating that the destroyed video evidence, had it not been lost, would have favored the plaintiff. *Id.* at 1114-15.

Many courts, including this Court, have been persuaded by *Pettit*'s reasoning, and followed and applied its imputed spoliation holding. *See, e.g., Mazzini v. Nevada*, 2017 WL 4284597 at *6 (D. Nev. Sept. 27, 2017) ("District courts within this [Ninth] Circuit have held that spoliation by a prison may be imputed to named defendants in circumstances similar to these. The seminal case on this topic appears to be *Pettit v. Smith*."); *Ramos v. Swatzell*, 2017 WL 2857523 at *5-7, 13-15 (C.D. Cal. June 5, 2017) (imputing department's loss of personnel file to individual defendant and granting adverse inference instruction and other sanctions); *Muhammad v. Mathena*, 2016 WL 8116155 at *7-9 (W.D. Va. Dec. 12, 2016) (imputing prison supervisors' loss of video evidence to individual defendant and granting adverse inference instruction).

This Court should follow and apply this line of cases. *See Davidson v. Nicolou*, 2017 WL 3726712 at *3 n.4 (S.D. Ga. Aug 29, 2017) ("The reasoning of these . . . cases is ultimately persuasive, however, given the Department's flagrant

ARNOLD &amp; PORTER | KAYE SCHOLER

9

failure to abide its duty to preserve the documents set forth in the litigation hold notice. It assumed the risk that . . . it, and its employees which it otherwise indemnifies, would be subject to spoliation sanctions.").

Judge Pym's decision in *Ramos* is instructive. The individual defendant Garcia denied he had committed actionable misconduct that other discovery suggested was likely addressed in his personnel file archived by the California prison authorities. The file had, however, been "inadvertently misplaced/destroyed during a reorganization project at CIW and could not be reproduced." *Id*. at *3.

Judge Pym held that, although CIW was not a defendant in the action, its spoliation must be imputed to the defendant because it "was an interested third party that controlled Garcia's personnel file and had access to it." *Id*. at *6. Further, as a matter of California law, CIW was required to pay any compensatory damages awarded against Garcia. *Id*. Accordingly, the court held: "CIW's spoliation of Garcia's personnel file and breach of duty to preserve evidence may be imputed onto Garcia to avoid unfair prejudice to plaintiffs." *Id*. at *7.

In *Ramos*, the court recommended an adverse inference instruction, including that the trial court "should instruct the jury that it may presume the lost evidence is relevant and favorable to plaintiffs." *Id*. at *14; *see also id*. at *6 ("Without the [destroyed] file, the parties are left to speculate regarding its contents.").

This case replicates in every respect each of the factors that led the courts in *Pettit* and *Ramos* (and similar cases) to impute liability for spoliation by the employing authority to the individual defendant facing Section 1983 damages.

As with the lost prison video in *Pettit* and the lost personnel file in *Ramos*, here, the destroyed unredacted dispatcher recording was in the possession and control of the City of Placentia Police Department. It was lost by an intentional act of the City in violation of the City's duty to preserve the recording as relevant litigation evidence. Thus, the City was, even after its dismissal as a party had been affirmed, an "interested third party that controlled" the evidence.

10

Further, as required by California statute, the City is indemnifying Pascarella for all of his attorneys' fees and expenses incurred in defending Vohra's claims, and the City will be responsible for the compensatory damages (and perhaps also the punitive damages) the jury may award to Vohra.  *See* Cal. Gov't Code § 825(a) (requiring public employer to indemnify officer's defense costs and compensatory damages judgment), *id.* at § 825(b) (indemnification of punitive damages in some situations); *Deocampo v. Potts*, 836 F.3d 1134, 1141 (9th Cir. 2016) ("Section 825 requires the public entity to indemnify its employee for compensatory damages awarded under 42 U.S.C. § 1983 and attorney's fees the employee is ordered to pay under 42 U.S.C. § 1988."); *Williams v. Horvath*, 16 Cal. 3d 836, 843-44 (1976) (police officers liable under Section 1983 are fully indemnified by their employer).

Indeed, here, the spoliation is more culpable, and the argument for imputation to the officer-defendant is even more compelling, than it was in *Pettit* or *Ramos* and similar cases.  In each of those cases, while the individual officer was a defendant, their employer was *always* a *non-party*.  That is not the situation here.  The City was itself a defendant to Vohra's complaint when the preservation duty attached, and, in all probability, the City destroyed the recording while it was itself still a co-party with Pascarella—and a party's preservation duty is absolute.  Moreover, during the five-plus years the City was a co-defendant, the same City-paid counsel jointly represented the City and all of the individual defendants, including Pascarella who they continue to represent, still at the City's expense.

In these circumstances, consistent with *Ramos* and the other case law following *Pettit*, the Court should impute the City's spoliation to Pascarella.

## C. THE COURT SHOULD REMEDY THE SPOLIATION BY GIVING AN ADVERSE INFERENCE INSTRUCTION

Whether the Court uses its "inherent powers to sanction spoliation of evidence," or, instead, applies Federal Rule of Civil Procedure 37(e)(2)(B) because the spoliation concerned "electronically stored information," the remedy for the

ARNOLD PORTER
KAYE SCHOLER

destruction of the unredacted recording should be the same:  The Court should give an adverse inference instruction that tells the jury it should presume that, had the unredacted recording not been destroyed and been available at trial, it would have shown that the dispatcher identified Vohra to Pascarella as the truck's driver before Pascarella determined to pursue the truck and arrest Vohra.

"The Ninth Circuit has approved the use of adverse inferences as sanctions for spoliation of evidence."  *Compass Bank*, 104 F. Supp. 3d at 1054.  "A trial court's discretion regarding the form of a spoliation sanction is broad," including "instructing the jury that it may draw an adverse inference."  *Apple*, 881 F. Supp. 2d at 1135 (citing *In re Oracle Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010)); *see also Johnson v. Wells Fargo Home Mortgage, Inc.*, 635 F.3d 401, 422 (9th Cir. 2011) (affirming adverse inference instruction because defendant "willfully reformatted his hard drives"); *Ramos*, 2017 WL 2857523 at *14 (recommending adverse inference instruction for imputed spoliation under court's inherent powers); *First Financial Security, Inc. v. Freedom Equity Group, LLC*, 2016 WL 5870218 at *3 (N.D. Cal. Oct. 7, 2016) (granting adverse inference instruction under Rule 37(e)(2)(B) because "the spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case").

1.  Rule 37(e) May Not Be Applicable

If applicable, the current iteration of Federal Rule of Civil Procedure 37(e), effective as of December 1, 2015, controls "when electronically stored information that should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it."  Fed. R. Civ. P. 37(e). However, for either of two reasons, Rule 37(e) does not apply here, and thus the Court should determine the spoliation remedy under its "inherent powers."

First, it is doubtful whether the unredacted recording of the dispatcher's communications with Pascarella constitutes "electronically stored information" ("ESI") covered by Rule 37(e).

12

In *Pettit v. Smith*, the district court held that the computer-stored video destroyed by the prison authorities was not ESI, and thus Rule 37(e) did not apply. *See* 45 F. Supp. 3d at 1115 n.6 ("Although this case concerns deletion of a digital video file, it does not concern ESI in the sense addressed in the proposed amendment [to Rule 37(e)], which is concerned more with the operation of modern ESI systems and the ease with which information can be added to and lost by such systems."). The court instead imposed an adverse inference remedy based on its inherent powers. *Id*. at 1114.  This holding is significant because, as *Pettit* discloses, Judge Campbell, the district judge who decided the opinion, was then the chair of the Advisory Committee on the Federal Rules of Civil Procedure, which had written the then-proposed (and now implemented) text of Rule 37(e).  *Id*. at 1115 n.6.

If a lead author of amended Rule 37(e) did not believe the Rule he had helped draft was intended to cover a "digital video file" of routine daily interactions at a prison, there is reason to believe that Rule 37(e) does not apply to the destruction of a digitally-maintained audio file of routine, non-electronic communications between a police dispatcher and officers on police patrol.

Second, Rule 37(e) may not apply when the spoliation occurred before the Rule came into effect.  *See Distefano v. Law Offices of Barbara H. Katsos, P.C.*, 2017 WL 1968278 at *4 (E.D.N.Y. May 11, 2017) (whether to apply pre-2015 law is decided on "case-by-case basis"; refusing to apply new Rule 37(e)); *Thomas v. Butkiewicus*, 2016 WL 1718368 at * 8 (D. Conn. April 29, 2016) (same).

*Thomas* is a near-mirror image of this case.  In *Thomas*, a plaintiff sued the prison authorities under Section 1983 for failing to protect him from assault by other inmates.  When representing himself pro se, he requested surveillance video footage of the incident, and the defendants produced a partial video tape.  2016 WL 1718368 at *1, 4-5.  Subsequently, after the plaintiff was represented by counsel, he requested a more complete version of the video; the defendants then admitted that the video of "the first 30-40 minutes of the recreation period" had been erased after the edited

13

ARNOLD & PORTER
KAYE SCHOLER

video had been produced.  *Id.*  The court found the prison authorities had violated their duty to preserve the complete video recording, and that their failure to do so constituted spoliation meriting an appropriate remedy.  *Id*. at \*9-15.

Even though the *Thomas* plaintiff's motion for an adverse instruction destruction came after new Rule 37(e)'s effective date, the district court in *Thomas* decided to apply the pre-Rule law, and to determine the remedy under its inherent powers to deter spoliation.  *Id*. at \*8  The court noted that, under the Chief Justice's order transmitting the new Rule 37(e) to Congress, district courts were directed not to apply the new Rule to pending cases if "the application of such rule in such proceedings would not be feasible or work injustice, in which event the former rule applies."  *Id.*

The *Thomas* court applied the pre-Rule law because (i) the action had been pending for almost three years when the new Rule became effective; (ii) for two of those three years, "Thomas was prosecuting this action pro se"; (iii) if he had retained counsel earlier, the spoliation issue and the appropriate sanctions remedy would have been decided earlier under the old rule; and (iv) the incident and the spoliation both occurred while the old law applied.  *Id.*  "Under these circumstances, the court concludes that it would be unjust  to utilize the new standard of the revised Rule 37(e) in this case."  *Id.*  The court then determined that an adverse inference instruction was the appropriate remedy.  *Id*. at \*15-17.  The Court should reach the same conclusion as in *Thomas*.[2]

There are many, almost exact analogies between this case and *Thomas*:  (i) as

---

[2] *But see Security Alarm Financing Enterprises, L.P. v. Alarm Protection Technology, LLC*, 2016 WL 7115911 at \*2-3, 7 (D. Alaska Dec. 6, 2016) (declining to follow *Thomas*, and applying amended Rule 37(e) in contract dispute; defendant's overwriting of call-center audio files merited sanctions, but, on the "relatively murky record before the Court on this topic," not an adverse inference instruction).  This Court should follow the more factually analogous decision in *Thomas*.

ARNOLD & PORTER
KAYE SCHOLER

in *Thomas*, Vohra commenced his Section 1983 action four years before the new Rule 37(e) became effective; (ii) like *Thomas*, Vohra was representing himself pro se when Defendants made their production of the edited Tape in 2011; (iii) after obtaining counsel, Vohra sought a complete, unredacted version, a demand that, as in *Thomas*, would have been made before the new Rule went into effect had counsel been appointed sooner; (iv) like *Thomas*, the destruction occurred before the new Rule went into effect; and, (v) in the circumstances, Vohra, as with *Thomas*, could not have made this request for an adverse inference instruction until after the amended Rule was in effect.

Just as the *Thomas* court held that it would be unfair to hold the City to the arguably higher standard of the new Rule for an act of spoliation that happened while the old law of inherent powers applied, in the essentially identical situation here, this Court should likewise conclude that it would be unjust to Vohra to give the City and Pascarella the benefit of amended Rule 37(e). This conclusion is especially appropriate when, as *Pettit* indicates, the destroyed evidence was, in any event, likely not ESI of the kind intended to be covered by the amended Rule.

2. **If Rule 37(e) Does Not Apply, An Adverse Inference Instruction Under The Court's Inherent Powers Is The Appropriate Remedy For The Spoliation**

If Rule 37(e) is inapplicable, then the Court should apply its inherent powers to deter and remedy spoliation and order an adverse inference instruction.

As the Ninth Circuit has explained, this Court has the authority to impose a spoliation remedy because of "the inherent power of federal courts to levy sanctions in response to abusive litigation practices." *Leon*, 464 F.3d at 958. This "inherent power" derives from the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). *See also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (recognizing trial courts' "inherent discretionary power to make appropriate rulings in response to the

15

ARNOLD & PORTER
KAYE SCHOLER

destruction or spoliation of relevant evidence").

Applying these inherent powers, a district court may use an adverse inference instruction to remedy spoliation when a party negligently or willfully destroys evidence. *See Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107-08 (2d Cir. 2002). "Many courts in this [Ninth] circuit have adopted a multi-factor test developed in the Second Circuit [in *Residential Funding*]." *Ramos*, 2017 WL 2857523 at *13.

Under the *Residential Funding* test, an adverse inference instruction is appropriate if (1) the party had an obligation to preserve the evidence at the time it was destroyed; (2) the records were destroyed at least negligently (i.e., "with a culpable state of mind"); and (3) the evidence was relevant to a claim or defense. *Id.* (quoting *Residential Funding*, 306 F.3d at 107); *see also id.* ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent.") (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). The City's destruction of the unredacted recorded communications between the dispatcher and Pascarella satisfies all three elements of the *Residential Funding* test, and justifies an adverse inference instruction remedy.

As to the first element, the City had a duty to preserve the unredacted recording because the communications described the incident underlying the litigation. Further, the City had already produced an edited version of the recording, and thus had a duty to preserve the complete original from which the edit was made. Moreover, as a party, the City (and the individual defendants too) had a duty to preserve this evidence for as long as the action continued.

Second, the destruction was intentional (even though negligence alone would have met the *Residential Funding* standard) because the City destroyed the documents while it was still a party to the litigation, and has offered no explanation for the spoliation. The City cannot argue that the destruction of the underlying materials was done inadvertently in the normal course of business because, to create

ARNOLD &amp; PORTER
KAYE SCHOLER

16

the Tape produced with Defendants' initial disclosures, the audio file with the recorded communications about Vohra must have been extracted and held apart from the undifferentiated pile of other daily dispatcher files, and would not be subject to any routine erasure practice.  Any destruction decision affecting this segregated-out material must have been intentional, and, presumably, involved at least consultation with attorneys or defendants or others aware of the preservation obligation and the materials' potential significance in this lawsuit.  *See First Financial*, 2016 WL 5870218 at *3 ("the spoliation of evidence raises a presumption that the destroyed evidence . . . was adverse to the party that destroyed it").  Thus, the evidence was destroyed at least "with a culpable state of mind," meeting the second element of the *Residential Funding* test.

Third, the destroyed recording was relevant to Vohra's claims.  The City acknowledged the communications' relevance by voluntarily producing the redacted version with Defendants' Rule 26(a) initial disclosures.  Given the City's (presumably clear) understanding of its preservation obligation, it can reasonably be inferred that the reason for the recording's destruction was that, had the unredacted version been produced, it would have shown evidence adverse to the City and its officers, such as Pascarella.  For example, the now-lost version would have confirmed the CAD Log evidence that Pascarella knew Vohra's identity as the truck's driver before the arrest.  And, had it not been destroyed, the complete tape would corroborate Vohra's testimony that, when Pascarella arrested Vohra, he recognized him as the author of numerous complaining letters to the Chief of Police.  *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents").

In this situation, the Court should use its inherent powers to remedy the spoliation by granting Vohra's request for an adverse inference instruction.  *See Ramos*, 2017 WL 2857523 at *14 (imposing adverse inference instruction because

17

ARNOLD&PORTER
KAYE SCHOLER

personnel file destroyed "with at least gross negligence"); *Pettit*, 45 F. Supp. 3d at 1114-15 (imposing adverse inference instruction because destruction of video evidence was "at least grossly negligent"); *Internmatch, Inc. v. Nxtbigthing, LLC,* 2016 WL 491483 at *13 (N.D. Cal. Feb. 8, 2016) (imposing adverse inference instruction because "Defendants willfully failed to preserve relevant evidence"); *HM Electronics v. R.F. Technologies, Inc.*, 2015 WL 4714908 at *32-34 (S.D. Cal. Aug. 7, 2015) (applying adverse inference instruction to "negligently" destroyed electronic data); *Apple*, 881 F. Supp. 2d at 1147-51 (imposing adverse inference instruction when party destroyed electronic files "with a conscious disregard of its [preservation] obligations").

### 3.  If Rule 37(e) Applies, It Also Justifies An Adverse Inference Instruction

The same adverse inference instruction remedy should also follow if the Court holds that, after all, Rule 37(e) applies to the spoliation of the unredacted recording.

Rule 37(e)(2) applies when "electronically stored evidence" is "lost because a party failed to take reasonable steps to preserve it," and "the party acted with the intent to deprive another party of the information's use in the litigation."  In that situation , the Court "may instruct the jury that it may or must presume the information was unfavorable to the party [who lost the information]."  Fed. R. Civ. P. 37(e)(2)(B).

As the Advisory Committee's Notes explain, revised Rule 37(e) rejects the *Residential Funding* test.  *See* 8B Charles Wright, Arthur Miller & Richard Marcus, *Federal Practice and Procedure* § 2284.2 (Supp. 2017).  Now, to impose an adverse inference instruction, the Court "need find only that there was an intent not to preserve the information."  *Id.*

As explained above, the circumstances in which the Tape was made and produced in 2011 necessarily mean that the City's destruction of the underlying data from which it was created could not have been inadvertent, but had to have been an intentional act done to harm Vohra's claims.  *See DVComm, LLC v. Hotwire*

18

ARNOLD&PORTER | KAYE SCHOLER

*Communications, LLC,* 2016 WL 6246824 at *7 (E.D. Pa. Feb. 3, 2016)
("Destruction of evidence during pendency of litigation may suffice to support an
inference the party destroyed responsive ESI because it was harmful."); *First
Financial*, 2016 WL 5870218 at *3 ("the spoliation of evidence raises a presumption
that the destroyed evidence goes to the merits of the case").

The City failed to preserve relevant evidence that, as parties, it and Pascarella
had a duty to maintain; instead, they destroyed the evidence. The City has provided
no explanation for the destruction. Given what can reasonably be presumed to be the
probative content of the destroyed evidence, the Court should find that the destruction
was intentional and was aimed at preventing Vohra from obtaining proof for his
claims. An adverse inference instruction under Rule 37(e)(2)(B) is appropriate here.
*See TLS Management and Marketing Services LLC v. Rodriguez-Toledo*, 2017 WL
1155743 at *2 (D.P.R. Mar. 27, 2017) (granting adverse inference instruction when
malfunctioning laptop was discarded without downloading data); *First Financial
Security,* 2016 WL 5870218 at *3 (granting adverse inference instruction over claim
of innocent mistake); *O'Berry v. Turner*, 2016 WL 1700403 at *3-4 (M.D. Ga. April
27, 2016) (granting adverse inference instruction where digital driver-logs that
recorded incident were not preserved); *DVComm*, 2016 WL 6246824 at *4, 6-7
(granting adverse inference instruction when "rough draft" of disputed business plan
was deleted: "Permanently deleting crucial information which a party concealed
throughout discovery and which the adversary discovers only through a subpoena
cannot be permitted.").

*****

In sum, whether this Court determines that the destroyed evidence falls within
Rule 37(e), or is instead subject only to this Court's inherent powers to remedy
spoliation, the Court should reach the same conclusion that an adverse instruction is
the appropriate remedial response.

Vohra's Proposed Order, filed with this brief, proposes a form of words for the

19

ARNOLD & PORTER
KAYE SCHOLER

adverse inference instruction based on the instructions given by other Ninth Circuit district courts in this situation. *See Ramos*, 2017 WL 28557523 at * 14 (proposing text of instruction based on inherent powers); *First Financial*, 2016 WL 5870218 at *6 n.2 (proposing instruction text under Rule 37(e)(2)(B)); *HM Electronics*, 2015 WL 4714908 (same); *Apple*, 881 F. Supp. 2d at 1151 (instruction text based on court's inherent powers).[3]

Alternatively, the court may defer "the precise wording of the instruction" until trial. *See Internmatch*, 2016 WL 491483 at *13; *Thomas*, 2016 WL 1718368 at *17 ("The court will craft the specific instructions at the charging conference.").

## IV.   CONCLUSION

For any or all of the reasons set forth above, the Court should grant Plaintiff's motion for an adverse inference instruction to be given at trial.

Dated: December 4, 2017

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By:____/s/ Robert Barnes
    Attorneys for Plaintiff
DEEPAK VOHRA

---

[3] Vohra proposes the following instruction:

"The City of Placentia provided to Vohra an edited version of the recording of the communications between Pascarella and the police dispatcher relating to Pascarella's arrest of Vohra.  The City and Pascarella had a duty to preserve the complete unedited recording of these communications.  Instead, they destroyed the unedited recording, and it cannot be replaced.

Because of the recording's destruction in this improper manner, you should presume that, had the recording been preserved as the law requires, it would have confirmed that the dispatcher identified Vohra to Pascarella as the truck's driver, and that Pascarella knew Vohra to be the truck's driver when he decided to pursue and arrest him."